**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 11-cv-01132-REB-CBS

JHOSEMAR SAMANIEGO FERNANDEZ,

     Plaintiff,

v.

JOHN PEROULIS & SONS SHEEP, INC., a foreign corporation of Colorado,
LOUIS PEROULIS, AND
STANLEY PEROULIS,

     Defendants.

---

## FIRST AMENDED COMPLAINT

---

### PRELIMINARY STATEMENT

1.     Plaintiff is a sheepherder from the highlands of Peru who was brought to the

United States to work for Defendant John Peroulis & Sons Sheep, Inc., as an agricultural worker.

2.     From the moment Plaintiff arrived in Colorado, Defendants forced him to work

long hours under harsh conditions without sufficient food.  Defendant Stanley Peroulis

confiscated Plaintiff's immigration documents and prohibited him from communicating with

passersby.  Defendants Stanley and Louis Peroulis repeatedly verbally abused and threatened

Plaintiff and his co-workers.  When Plaintiff suffered a work-related injury, Defendants refused

him medical care.  Given these circumstances, Plaintiff felt that he could not leave the ranch and

had no choice but to continue working.

3.     Plaintiff brings this action to recover damages for injuries inflicted by Defendants

under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, the

Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.,* and common law claims under

Colorado law for extreme and outrageous conduct, false imprisonment, promissory estoppel and

breach of contract.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal

question), 18 U.S.C. § 1595 (TVPRA), 29 U.S.C. § 216(b) (FLSA) and supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under Colorado law.

5.     Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial portion of the events

or omissions giving rise to Plaintiff's claims occurred in Colorado.  On information and belief,

Defendants Stanley and Louis Peroulis reside in Colorado.  Defendant John Peroulis & Sons

Sheep, Inc., is registered as a foreign corporation in Colorado.

## PARTIES

A.     **PLAINTIFF**

6.     Plaintiff, Jhosemar Samaniego Fernandez, is a citizen of Peru and was employed

by Defendant John Peroulis & Sons Sheep, Inc., ("Defendant John Peroulis & Sons") as a

temporary foreign agricultural worker on an H-2A visa from approximately May 2, 2009, to

September 14, 2010.

7.     During the course of his employment, Plaintiff worked on Defendant John

Peroulis & Sons' ranch, which raises sheep for movement in interstate commerce.

8.     Before coming to the United States, Plaintiff lived in a rural town in the highlands

of Peru and had experience as a sheepherder.  Plaintiff had never previously traveled outside of

Peru.

9.    Plaintiff was born June 26, 1986, and does not understand, read or speak English.

B.    DEFENDANTS

10.    Defendant John Peroulis & Sons is registered as a foreign corporation in good standing in Colorado, with a principal street mailing address in Craig, Colorado.

11.    Defendant John Peroulis & Sons was formed under Wyoming law but is presently inactive and administratively dissolved in Wyoming.

12.    Defendant John Peroulis & Sons employed Plaintiff to work on its ranch.

13.    Defendant John Peroulis & Sons is owned exclusively by family members.

14.    Defendant Stanley Peroulis is an individual residing in Colorado.

15.    Defendant Stanley Peroulis is an officer and/or director of Defendant John Peroulis & Sons.

16.    Defendant Louis Peroulis is an individual residing in Colorado.

17.    Defendant Louis Peroulis is the registered agent for Defendant John Peroulis & Sons.

18.    Defendants Stanley and Louis Peroulis are responsible for the day-to-day ranching operations of Defendant John Peroulis & Sons, including the supervision of workers.

19.    Defendants transact ranch business and/or discharge ranch management duties from locations commonly known as the "Hayden" and "Baggs" ranches.

**STATEMENT OF FACTS**

20.    Defendant John Peroulis & Sons employs temporary foreign workers under the H-2A visa program to work as sheepherders on its ranch.

21.     The H-2A program enables employers to hire foreign workers to come to the U.S. to perform temporary agricultural work.  8 U.S.C. § 1188.

22.     Regulations found at 20 C.F.R. § 655.100 *et seq.* govern the contents of job offers ("clearance orders") that must be made to both U.S. and temporary foreign workers.

23.     As a part of the clearance orders, employers are required to:

    (a)     Furnish workers with payroll statements on or before each pay day;

    (b)     Guarantee workers employment for at least three-fourths of the workdays of their work contracts;

    (c)     Promise to comply with applicable federal, state and local employment-related laws and regulations;

    (d)     Promise to pay the Adverse Effect Wages Rate (AEWR) to workers performing agricultural work;

    (e)     Provide a copy of the work contract to workers; and

    (f)     Promise not to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against . . . any person who has with just cause" exercised his rights under the employment contract.

24.     As a part of the clearance order, employers who hire workers for sheepherding are: (a) allowed to negotiate a contract of up to 3 years; (b) required to provide workers with sufficient food to have 3 adequate meals per day; and (c) required to pay workers, at a minimum, on a monthly basis.  U.S. DOL Field Memo 24-01 (Aug. 1, 2001).

25.     The clearance order as described in paragraphs 23 & 24 is incorporated by regulation and by operation of law into the contracts under which workers are employed.  29 C.F.R. § 501.10(d).

26.     On information and belief, Defendant John Peroulis & Sons submitted various clearance orders in accordance with the H-2A program requirements to the U.S. Department of Labor (U.S. DOL) so that it could obtain sheepherders in 2009.

27.     On information and belief, with approval from the U.S. DOL, Defendant John Peroulis & Sons petitioned U.S. Citizenship and Immigration Services to obtain H-2A visas for the sheepherders it would employ in 2009 and 2010.

28.     In March 2009, while in Peru, Plaintiff heard about a job opportunity in Colorado working as a sheepherder at the same ranch Plaintiff's uncle was working.

29.     Soon thereafter, Sonia Damian and her husband, Alfredo Inga, provided Plaintiff with the instruction and assistance necessary to obtain the H-2A visa and travel to Defendant John Peroulis & Sons' ranch to work as a sheepherder.

30.     Alfredo Inga told Plaintiff that his employment with Defendant John Peroulis & Sons would be for three years.

31.     Plaintiff decided to proceed with the process to go to the U.S. to work for Defendant John Peroulis & Sons.

32.     Sonia Damian and Alfredo Inga are the sister and brother-in-law of Crisologo Damian, a recruiting agent for Defendants.

33.     On information and belief, Crisologo Damian was directed by Defendants in the dealings with Plaintiff, including Plaintiff's recruitment and/or arrival to the U.S.

34.     On information and belief, Sonia Damian's and Alfredo Inga's dealings with Plaintiff, including his recruitment and/or arrival to the U.S., were directed by Crisologo Damian and/or Defendants.

35.     In order for Plaintiff to get the job with Defendants, Plaintiff later learned while on the ranch that his uncle had been required to pay $2,000 to Crisologo Damian.

36.      Plaintiff incurred travel expenses and had to pay numerous non-recruitment fees to obtain the necessary paperwork to get the visa.

37.     In late March 2009, Plaintiff went to the U.S. Consulate in Lima, Peru, to get his H-2A visa, for which Defendant John Peroulis & Sons had petitioned.

38.     Plaintiff obtained an H-2A visa that was valid from April 22, 2009, through October 16, 2009, and was informed that with his H-2A visa, he was only allowed to work for Defendants in the U.S.  Plaintiff was also informed that he must keep his I-94 document in his possession at all times, because it evidenced lawful entry into the U.S.

39.     On May 1, 2009, Plaintiff received his flight confirmation code from Crisologo Damian and flew from Lima, Peru, to Houston, Texas, to Denver, Colorado, to Hayden, Colorado, arriving on May 2, 2009.

40.     After his arrival in Hayden, Plaintiff was picked up by Defendant Stanley Peroulis, who immediately took his personal identification and authorization documents, including his passport, H-2A visa and I-94.

41.     Defendant Stanley Peroulis then took Plaintiff to the ranch, where he was immediately put to work until approximately 10 p.m.

42.    After approximately one week, Defendants returned Plaintiff's passport and visa, but retained his I-94.

43.    Plaintiff did not receive a copy of his work contract or an employee handbook.

44.    While he was on the ranch, Defendants did not give Plaintiff his pay or pay statements every month.

45.    Although not paid on a timely basis, Plaintiff received a monthly wage of $750.

46.    Plaintiff was always required to work long hours, approximately 17 hours per day, commencing before sunrise and working past sunset.

47.    In 2009, Plaintiff was designated by Defendants to care for and maintain the ranch facilities and fields.  As such, Plaintiff spent the majority of his time cleaning and mending corrals, building fences, cutting weeds, sweeping out the granary and watering fields, and was not in attendance of sheep, either on a constant or standby basis.

48.    The work referenced in the preceding paragraph was performed at the "Hayden" and "Baggs" ranches and not on the range.

49.    While performing the tasks described in paragraph 47 above, Plaintiff worked a set schedule and was subject to regular supervision by Defendants.

50.    Defendants Stanley and Louis Peroulis knew that, under Plaintiff's H-2A visa, Plaintiff could only work for Defendant John Peroulis & Sons in the U.S. and believed that Plaintiff would suffer extreme financial hardship if he were forced to return prematurely to Peru.

51.    Defendants Stanley and Louis Peroulis created an atmosphere in which Plaintiff and other workers feared being sent back to Peru for failure to perform work according to Defendants' exact specifications or for breaking any of the ranch "rules."

52.     Throughout Plaintiff's employment, Defendants provided Plaintiff with the barest of provisions.  Plaintiff completely depended on Defendants for food and oftentimes was hungry and forced to ration because he did not have enough food.  On numerous occasions, Defendants denied restocking Plaintiff's provisions as punishment for some perceived infraction.

53.     During Plaintiff's first week of employment at the ranch, Defendants Stanley and Louis Peroulis yelled at him for taking in excess of 15 minutes to prepare and eat his lunch.

54.     Defendants Stanley and Louis Peroulis repeatedly verbally abused Plaintiff using curse words, such as "fucking" or "son of a bitch," and pointedly told him that they were the ones who "helped his family" survive and "bettered his financial situation."

55.     Plaintiff diligently worked long hours and performed all tasks assigned to him by Defendants.  Plaintiff made it a point to run, not walk, up to Defendants Stanley and Louis Peroulis when he saw them arrive at his work site.

56.     Despite Plaintiff's efforts, during the summer of 2009, Defendant Stanley Peroulis yelled at Plaintiff and threatened to send him back to Peru after he could not immediately locate Plaintiff during an unannounced visit.  Plaintiff had been clearing a ditch in another location at the time.

57.     Plaintiff greatly feared being sent back to Peru because of his large, extended family's reliance on his earnings to meet their basic needs, which included his father's and sister's medical care.  Plaintiff also feared being blacklisted and the personal humiliation of being returned to Peru prematurely.

58.     Plaintiff's visa expired on October 16, 2009, and during the remainder of his time on the ranch, Defendants never provided him with information about whether his visa had been renewed.

59.     After his visa expired, Plaintiff asked Defendant Stanley Peroulis about the status of his renewal and Defendant Stanley Peroulis told Plaintiff that he did not need it.

60.     Plaintiff was concerned about his lawful status in the United States.

61.     Plaintiff understood that Defendants did not permit access to the use of their telephones or for Plaintiff to have his own cell phone.

62.     On numerous occasions, Defendants Stanley and Louis Peroulis exhibited physically aggressive and intimidating behavior, such as kicking automobiles and animals, repeatedly placing Plaintiff in fear for his safety and well-being.

63.     Defendants did not permit Plaintiff or other coworkers to leave the worksite for any purpose, unless they were accompanied by Defendants.

64.     At various points, Plaintiff wanted to leave the ranch but because of Defendants' abusive and coercive behavior, and the fact Defendant Stanley Peroulis confiscated his I-94 upon his arrival, he did not. Plaintiff feared that without his I-94, he could not legally return to Peru and he would never be able to work in the U.S. again.

65.     On or around August 22, 2010, while shoeing horses for Defendants, a horse kicked as Plaintiff was hammering a nail into the horse's hoof, forcing the nail deep into Plaintiff's left ring finger.  The wound was extremely painful and bled profusely.

66.     Plaintiff, knowing that Defendant Louis Peroulis was inside the ranch house, knocked on the door but was unable to get a response or any help at all that day.

67.    When Defendant Stanley Peroulis arrived at Plaintiff's work site the following day, he gave Plaintiff some Band-Aids and pills.

68.    Plaintiff requested to see a doctor, but Defendant Stanley Peroulis informed him that it would not be possible because it was "too expensive."

69.    Even though the wound continued to be extremely painful and hampered Plaintiff's work, Defendants required Plaintiff to continue working and did not give him any time to rest or recover.

70.    At the time, Plaintiff was doing heavy work such as shoeing horses and repairing corrals, including digging post holes and burying posts.

71.    During this same time period, Defendant Stanley Peroulis observed Plaintiff talking to a worker from another ranch.  Defendant Stanley Peroulis started screaming at Plaintiff and forbid him from talking to anyone who passed by the ranch.

72.    After having suffered repeated and extensive abuse from Defendants Stanley and Louis Peroulis, Plaintiff decided that he must escape from the ranch.

73.    On September 14, 2010, Plaintiff left the ranch with little more than the clothes on his back, and with Defendants still in possession of his I-94.

74.    Due to the severe emotional abuse Plaintiff suffered on the ranch, Plaintiff has suffered from depression, headaches and problems sleeping and eating.

75.    Defendants have a history of mistreating their H-2A sheepherders.

76.    In 2000, the U.S. DOL filed a case against Defendants Peroulis, *Herman v. John Peroulis & Sons et al.*, Civ. Case No. 00-M-1873 (D. Colo. Sept. 25, 2000), attached hereto as Exhibit A.

77.     Pursuant to U.S. District Court Order dated March 30, 2001, attached hereto as Exhibits B1-B2, Defendants represented that they would abide by the terms of the "H-2A Compliance Plan," the H-2A provisions and implementing regulations.

78.     In the "H-2A Compliance Plan," Defendants agreed, among other things, to: (1) prohibit acts of workplace violence; (2) provide workers adequate breaks for eating meals; (3) require that workers have a two-week supply of food at all times; (4) provide workers access to a telephone to make phone calls; (5) provide workers copies of the work contract and employee handbook; and (6) ensure that workers are in possession of their passports and visas at all times.

79.     As an employee of Defendants, Plaintiff was the intended third-party beneficiary of the agreement made with U.S. DOL in the "H-2A Compliance Plan."

## FIRST CLAIM FOR RELIEF

### (Trafficking Victims Protection Reauthorization Act)

80.     Plaintiff realleges and incorporates by reference the allegations set forth above.

81.     This claim arises against Defendants under the TVPRA.

82.     Pursuant to 18 U.S.C. § 1589(a), Defendants knowingly recruited, harbored, provided, or obtained by any means, Plaintiff, for labor or services by means of:

      (1)     force or threats of force;

      (2)     serious harm or threats of serious harm;

      (3)     threatened abuse of law or legal process; or

      (4)     a scheme, plan, or pattern intended to cause Plaintiff to believe that, if he did not perform such labor or services, that he would suffer serious harm.

83.     Pursuant to 18 U.S.C. § 1589(b), Defendants, knowingly or in reckless disregard of the facts, participated in a venture that obtained labor or services by means described in paragraph 82, and thereby knowingly benefited financially.

84.     Pursuant to 18 U.S.C. § 1590, Defendants knowingly recruited, harbored, provided, or obtained by any means, Plaintiff, for labor or services, in violation of 18 U.S.C. § 1592, by means of removing, confiscating, or possessing Plaintiff's immigration documents:

(a)     in the course of a violation of 18 U.S.C. § 1589;

(b)     with intent to violate 18 U.S.C. § 1589; or

(c)     to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiff's liberty to move or travel, in order to maintain the labor or services of Plaintiff, when Plaintiff was a victim of a severe form of trafficking in persons.

85.     As a result, Plaintiff suffered injuries and is entitled to recover damages pursuant to 18 U.S.C. § 1595.

## SECOND CLAIM FOR RELIEF

### (Fair Labor Standards Act)

86.     Plaintiff realleges and incorporates by reference the allegations set forth above.

87.     This claim arises under FLSA, 29 U.S.C. § 201 *et. seq.*

88.     Defendants failed to pay Plaintiff the required minimum wage for his work during calendar year 2009.

89.     As a result, Plaintiff suffered damages.

## THIRD CLAIM FOR RELIEF

### (False Imprisonment Claim)

90.     Plaintiff realleges and incorporates by reference the allegations set forth above.

91.     Defendants intentionally restricted Plaintiff's freedom of movement.

92.     Plaintiff's freedom of movement was restricted for a period of time, directly or indirectly, by Defendants through fear.

93.     Plaintiff was conscious that his freedom of movement was restricted.

94.     Defendants' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiff.

95.     As a result, Plaintiff has suffered damages.

## FOURTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct Claim)

96.     Plaintiff realleges and incorporates by reference the allegations set forth above.

97.     Defendants engaged in a course of conduct that constituted extreme and outrageous conduct against Plaintiff.

98.     Defendants acted recklessly or with the intent of causing Plaintiff severe emotional distress.

99.     Defendants' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiff.

100.    Defendants' conduct caused Plaintiff to suffer severe emotional distress.

101.    As a result, Plaintiff has suffered emotional injuries and damages.

## FIFTH CLAIM FOR RELIEF

### (Promissory Estoppel Claim against Defendant John Peroulis & Sons)

102.    Plaintiff realleges and incorporates by reference the allegations set forth above.

103.    Defendant John Peroulis & Sons and/or its agents made promises to Plaintiff regarding the length of his employment contracts.

104.    Agents of Defendant John Peroulis & Sons had apparent authority to make such promises to Plaintiff.

105.    Defendant John Peroulis & Sons should reasonably have expected that such promises would induce action and/or forbearance by Plaintiff.

106.    Plaintiff was in fact induced to act and/or refrained from acting based on such promises made by Defendant John Peroulis & Sons.

107.    Defendant John Peroulis & Sons broke its promises to Plaintiff.

108.    As a result, Plaintiff suffered damages.

109.    Injustice can only be avoided by the enforcement of Defendant John Peroulis & Sons' promises.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract – Third-Party Beneficiary Claim)

110.    Plaintiff realleges and incorporates by reference the allegations set forth above.

111.    On March 30, 2001, Defendants agreed to abide by the terms of the "H-2A Compliance Plan," attached hereto as Exhibits B1-B2, as well as the H-2A provisions and implementing regulations.

112.    Plaintiff is a third-party beneficiary to that agreement.

113.    Defendants breached multiple provisions of the agreement by failing to comply with the terms of the "H-2A Compliance Plan," as well as the H-2A regulations.

114.    As a result, Plaintiff suffered injuries.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Contract Claim against Defendant John Peroulis & Sons)

115.    Plaintiff realleges and incorporates by reference the allegations set forth above.

116.    Defendant John Peroulis & Sons and Plaintiffs entered into an employment contract by virtue of Plaintiff's employment under Defendant John Peroulis & Sons' H-2A clearance order.

117.    Plaintiff performed his obligations under this contract until Defendants' conduct rendered his performance impossible.

118.    Defendant John Peroulis & Sons breached the employment contract by failing to comply with the contract's terms and conditions.

119.    As a result, Plaintiff suffered damages.

## DEMAND FOR JURY TRIAL

120.    Plaintiff demands a trial to a jury for all issues so triable.

## PRAYER FOR RELIEF

121.    Plaintiff respectfully requests that this Court enter an order:

    a)    accepting jurisdiction of this case;

    b)    declaring that Defendants violated the FLSA and awarding Plaintiff unpaid wages, liquidated damages and attorneys' fees;

15

c)      declaring that Defendants violated the TVPRA and awarding Plaintiff

damages and reasonable attorneys' fees;

d)      granting a declaratory judgment against Defendants on Plaintiff's claims

of extreme and outrageous conduct, false imprisonment, promissory

estoppel, and breach of contract, and awarding Plaintiff damages;

e)      declaring that Defendant John Peroulis & Sons breached its contract with

Plaintiff and awarding Plaintiff damages as a result of this breach;

f)      awarding Plaintiff reasonable attorney's fees and costs;

g)      awarding Plaintiff pre-judgment and post-judgment interest; and

h)      granting such other relief as this Court deems just and proper.

This 14th day of July, 2011.                    Respectfully Submitted,

  s/Jennifer J. Lee_____
Jennifer J. Lee
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 830-7860
jlee@colegalserv.org

  s/Jenifer C. Rodriguez_____
Jenifer C. Rodriguez
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 830-7860
jcrodriguez@colegalserv.org

  s/Linda Surbaugh_____
Linda Surbaugh
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 830-7860
colinda2@aol.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on the 14st day of July 2011, I electronically filed the foregoing First Amended Complaint using the EM/ECF system which will send notification of such filing to the following e-mail addresses:

Lindsey Warren Jay, lwj@omhdlaw.com, tlz@omhdlaw.com

Jennifer Jung-Wuk Lee, jlee@colegalserv.org, kwalker@colegalserv.org

Jenifer Cari Rodriguez jcrodriguez@colegalserv.org, kwalker@colegalserv.org

Linda Ann Surbaugh, co2linda@aol.com

s/Jenifer Rodriguez
Jenifer Rodriguez
Attorney for Plaintiffs
**Migrant Farm Worker Division**
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail: jrodriguez@colegalserv.org