**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 11-cv-01132-REB-CBS

JHOSEMAR SAMANIEGO FERNANDEZ,

      Plaintiff,

v.

JOHN PEROULIS & SONS SHEEP, INC. *et al.*,

      Defendants.

_____

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
_____

      Plaintiff files this Response to Defendants' Motion to Dismiss Plaintiff's claims of forced labor and unlawful conduct with respect to documents pursuant to the Trafficking Victims Protection Reauthorization Act (TVPRA) and failure to pay the minimum wage pursuant to the Fair Labor Standards Act (FLSA).  As set forth below, Plaintiff's allegations are sufficient for the relief sought in his Complaint.  Defendants' Motion to Dismiss, therefore, should be denied.

## I.    LEGAL STANDARD

      Two recent U.S. Supreme Court cases, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), retire the long-held *Conley v. Gibson*, 355 U.S. 41 (1957), "no set of facts" standard.  The test of whether a complaint can survive a motion to dismiss is whether a complaint states "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Court has maintained the well-established rule that courts must construe the complaint in the light most favorable to the plaintiff, accepting well-pled factual allegations as true and drawing all reasonable inferences in plaintiff's favor. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555-56. The plausibility standard, however, "is not akin to a 'probability requirement'" and "plausible" cannot mean "likely to be true." *Iqbal*, 129 S. Ct. at 1949; *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Rule 12(b)(6), therefore, "'does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Twombly*, 550 U.S. at 555 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

In any event, granting dismissal for failure to state a claim is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)). For this reason, courts have granted leave to amend the complaint in order to address identified deficiencies. *See, e.g., Darrow v. WKRP Management, LLC*, No. 09-cv-01613-CMA-BNB, 2010 WL 1416799, at *3 (D. Colo. Apr. 6, 2010); *Eller v. Experian Info. Solutions, Inc.*, No. 09-cv-00040-MSK-KMT, 2009 WL 2601370, at *3 (D. Colo. Aug. 20, 2009).

## II.     RELEVANT FACTS

Plaintiff alleges the following facts in his First Amended Complaint. Plaintiff is an immigrant from the rural highlands of Peru who speaks no English and had never before been to the United States. Pl.'s Compl. ¶¶ 6, 8-9 (Doc. 9). In 2009, Defendants brought

Plaintiff on an H-2A visa that permitted him to be in the U.S. for the sole purpose of working on Defendants' sheep ranch. *Id.* ¶¶ 6-7, 38. All Defendants participate in and financially benefit from Defendants' sheep-ranch business. *Id.* ¶¶ 10-11, 13, 15, 17-18.

Plaintiff worked approximately 17 hours per day for Defendants for $750 per month. *Id.* ¶¶ 45-46. In 2009, Plaintiff's primary role was to care for and maintain Defendants' ranch facilities and fields, and he spent most of his time cleaning and fixing corrals, building fences, cutting weeds, sweeping the granary and watering fields at the "Hayden" and "Baggs" ranches. *Id.* ¶¶ 47-48. Plaintiff worked a set schedule and Defendants supervised him closely. *Id.* ¶¶ 49, 53-55, 62. In 2009, Plaintiff did not work on the range or attend to sheep on a constant or standby basis. *Id.* ¶¶ 19, 47-48.

Defendant Stanley Peroulis confiscated Plaintiff's passport, visa, and I-94 and put him to work immediately upon his arrival. *Id.* ¶¶ 40-41. Defendants later returned Plaintiff's passport and visa, but kept his I-94 and visa renewal. *Id.* ¶¶ 42, 58-59, 73. Defendants prohibited Plaintiff from using telephones, talking to outsiders or leaving the ranch. *Id.* ¶¶ 61, 63, 71. Defendants made Plaintiff work long hours, with insufficient time to rest or eat. *Id.* ¶¶ 46, 52-53. Despite a requirement by court order, Defendants did not give Plaintiff a handbook outlining his legal rights. *Id.* ¶¶ 43, 76-79.

Defendants' constant cursing, yelling and physically aggressive behavior intimidated Plaintiff. *Id.* ¶¶ 53-54, 56, 62, 71. Defendants created an atmosphere in which Plaintiff and his co-workers feared being sent back to Peru for not following exact orders or for breaking ranch "rules." *Id.* ¶¶ 51, 75-76. Plaintiff ran, rather than walked, up to Defendants when they came to his worksite, and he worked diligently to complete

all tasks given to him.  *Id.* ¶ 55.  Nevertheless, Defendants threatened to send Plaintiff

back to Peru when he could not be immediately located on an unannounced visit.  *Id.*

¶ 56.  Plaintiff feared the threat of being sent home early because he knew the extreme

financial hardship it would cause his family.  *Id.* ¶ 57.  He was also afraid of being

blacklisted, humiliated and having a ruined reputation if Defendants sent him back.  *Id.*

After Plaintiff hammered a nail deep into his finger, Defendants denied him medical

attention.  *Id.* ¶¶ 65-69.  Although Plaintiff feared for his personal safety, he did not

believe he had any other choice but to stay and work for Defendants.  *Id.* ¶¶ 62, 64.

Defendants mistreated Plaintiff and threatened to send him back to Peru,

knowing the extreme financial hardship Plaintiff feared if sent home and the restrictive

terms of Plaintiff's visa.  *Id.* ¶¶ 50, 56.  Defendants exploited this fear by demanding that

Plaintiff work to their exact specifications, forcing him to work 17 hours per day and with

an injured hand.  *Id.* ¶¶ 46, 50-51, 54, 69-70.  Plaintiff was, therefore, compelled to stay

working for Defendants until he was able to escape.  *Id.* ¶¶ 55, 64, 73.

## III.  TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT (TVPRA)

Defendants fundamentally misconstrue the factual and, at times, legal basis of

Plaintiff's TVPRA claim by selectively omitting the relevant alleged facts in their

analysis.  Further, Defendants attempt to insert their own factual allegations in order to

create alternative explanations of what "really happened" to Plaintiff.   On a motion to

dismiss, however, it is impermissible to challenge the credibility of Plaintiff's story to

determine what is more "probable."  *Iqbal*, 129 S. Ct. at 1949 ("the plausibility standard

is not akin to a 'probability requirement.'").  For the reasons set forth below, Plaintiff's

TVPRA claim should not be dismissed.

> **A.     Plaintiff Sufficiently Alleges that Defendants Conducted a Scheme Intended to Cause Plaintiff to Believe that He Would Suffer Serious Harm and Threatened Him with Serious Harm in Violation of 18 U.S.C. § 1589(a)(2) and (a)(4).[1]**

Plaintiff alleges that Defendants knowingly obtained his labor by means of a

scheme, plan, or pattern intended to make Plaintiff believe that he would suffer serious

harm if he did not labor for them.  18 U.S.C. § 1589(a)(4); Pl.'s Compl. ¶ 82 (Doc. 9).

Plaintiff pleads that Defendants' "scheme, plan or pattern" involved multiple

tactics designed to demean, disorient and intimidate him.  *See generally* Pl.'s Compl.

¶ 2.  Plaintiff alleges that Defendants' tactics included: (1) confiscation and retention of

his immigration documents, *id.* ¶¶ 40, 42, 58, 59, 73; (2) prohibiting him from using

telephones, talking to outsiders or leaving the ranch, *id.* ¶¶ 61, 63, 71; (3) cursing and

yelling at him, as well as creating a violent atmosphere by kicking objects and animals,

*id.* ¶¶ 53, 54, 56, 62, 71; (4) humiliating him by pointedly telling him that Defendants

helped his family survive, *id.* ¶ 54; (5) denying him access to information about his legal

rights, *id.* ¶¶ 43, 76-79; (6) threatening to send him back to Peru when he could not be

immediately located on an unannounced visit, *id.* ¶ 56; (7) creating an atmosphere in

which he feared being sent back to Peru for failure to perform work according to exact

specifications or follow ranch "rules," *id.* ¶¶ 51, 56; (8) denying him sufficient food and

punishing him by not restocking provisions, *id.* ¶ 52; (9) requiring him to work 17 hours

---

[1] Plaintiff does not claim that Defendants used force or threats of force in violation of 18 U.S.C.
§ 1589(a)(1).  Defs.' Mot. at 6-8 (Doc. 18).

per day with insufficient breaks to eat, *id.* ¶¶ 46, 53;[2] and (10) denying him medical care after he hammered a nail deep into his finger, *id.* ¶¶ 65-68. Further, Plaintiff alleges that Defendants' deliberate manner in executing these tactics, such as immediately confiscating his documents, requiring him to work upon arrival and keeping a close eye on him thereafter, illustrate Defendants' power and control. *Id.* ¶¶ 41, 49, 53-55, 62.

Further, Plaintiff properly pleads that he believed he would suffer serious harm if he did not continue to work. "Serious harm" includes "nonphysical harm, including psychological, financial, or reputational harm." 18 U.S.C. § 1589(c)(2); Defs.' Mot. at 9 (Doc. 18). While the examination of whether an employee faces undue psychological pressure is objective, "known objective conditions that make the victim especially vulnerable to pressure, such as . . . immigrant status, bear on whether the employer obtained labor from the employee by forbidden means." *Shukla v. Sharma*, No. 07-CV-2972, 2009 U.S. Dist. LEXIS 90044, at *35 (E.D.N.Y. Aug. 21, 2009); *United States v. Bradley*, 390 F.3d 145, 153 (1st Cir. 2004); *United States v. Dann*, No. 10-10191, 2011 WL 2937944, at *10 (9th Cir. July 22, 2011); *United States v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *21-22 (W.D.N.Y. Dec. 2, 2003).

Plaintiff states that he is an immigrant from the rural highlands of Peru who does not read, write or speak English. *Id.* ¶¶ 8-9. Plaintiff alleges that he feared for his personal safety and believed that Defendants would deny him food as punishment. *Id.* ¶¶ 52, 62. Plaintiff also alleges that he feared being sent back to Peru because his

---

[2] Defendants try to justify these actions by claiming that they are authorized conditions of Plaintiff's job. Defs.' Mot. at 13. The H-2A regulations do not countenance sheepherders working 17 hours per day, but rather state that they can be "on call for up to 24 hours per day" in order to "protect flocks from predators." U.S. DOL Field Memo 24-01 (Aug. 1, 2001). And Defendants' handbook, in fact, requires that Defendants permit workers to have "a minimum of 30 minutes" for each meal. Pl.'s Compl., Ex. B-2 at 13.

family would suffer extreme financial hardship and he would face blacklisting or a ruined reputation. *Id.* ¶¶ 51, 57. As a result, Plaintiff states that he ran, not walked, when he would see Defendants and would work long hours diligently, even when injured. *Id.* ¶¶ 55, 69-70. He also alleges that Defendants' confiscation of his I-94 and coercive conduct prevented him from leaving the ranch. *Id.* ¶ 64. Plaintiff, therefore, pleads that the degree of harm he feared he would suffer was sufficiently "serious" for Defendants to coerce him to work and remain on the ranch. *Compare* Defs.' Mot. at 11.[3]

Defendants, however, posit an alternate reality, alleging that Plaintiff's allegations recount the experiences of a "disgruntled employee" who worked for "difficult supervisors who were hard to please." *Id.* at 12. In doing so, Defendants conveniently omit any discussion of Plaintiff's factual allegations on which their liability rests. *Compare* Defs.' Mot. at 11-12 *with* Pl.'s Compl. ¶¶ 40, 46, 51-54, 56-57, 59, 61-63, 65-67, 71. As Plaintiff's pleadings must be accepted as true, *Twombly*, 550 U.S. at 555-56; *Iqbal*, 129 S. Ct. at 1949, Defendants' alternate fact-based explanation of Plaintiff as nothing more than "a worker who is unhappy with the admittedly difficult work he agreed to perform" belies the overall treatment alleged by Plaintiff.[4] Defs.' Mot. at 11.

Defendants also incorrectly assert that Plaintiff does not plead that Defendants intended him to believe that such serious harm would result. In determining intent, courts routinely examine whether the totality of the circumstances show that Defendants "intentionally manipulated the situation so that" Plaintiff "would feel compelled to

---

[3] For purposes of serious harm, Plaintiff need not make any allegation that Defendants "attempted to extort money from him, or that they forced him deeper and deeper into dept [sic]." Defs.' Mot. at 12.
[4] As an aside, Plaintiff is an experienced sheepherder familiar with the rigors of the job. *Compare* Defs.' Mot. at 11-12 *with* Pl.'s Compl. ¶ 8

remain." *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, No. 10-1172-AG, 2011 WL 1811029, at *10 (C.D. Cal. May 11, 2011); *Bradley*, 390 F.3d at 155 (finding that intimidation and minimizing contact with outsiders reinforced the inference that defendants had a deliberate scheme to hold laborers); *Dann*, 2011 WL 2937944, at *10 (reviewing whether the facts "taken together" compelled plaintiff to remain). Here, Plaintiff alleges that Defendants knew he had no other option but to work for them and that he would suffer extreme financial hardship if he returned to Peru. Pl.'s Compl. ¶¶ 50, 56. Plaintiff states that Defendants created an atmosphere in which he could be sent back to Peru at any moment for failure to work according to their exact specifications. *Id.* ¶¶ 51, 56. Plaintiff alleges that Defendants retained his I-94 and refused to give him information about his visa renewal. *Id.* ¶¶ 42, 58-59, 73. Plaintiff also alleges that Defendants used cursing, yelling and physically aggressive behavior to intimidate him. *Id.* ¶¶ 53-54, 62. Coupled with Defendants' actions to otherwise intimidate, demean and disorient him, Plaintiff alleges sufficient facts to reasonably infer that Defendants had the requisite intent to make Plaintiff believe serious harm would occur if he did not continue to work.[5] *See generally* Pl.'s Compl. ¶ 2.

Plaintiff also claims that Defendants knowingly obtained his labor by means of "threats of serious harm." 18 U.S.C. § 1589(a)(2). As stated above, Plaintiff pleads that Defendants threatened to send him to Peru, knowing that Plaintiff's early return would constitute serious harm. *Id.* ¶¶ 50, 51, 56-57. Plaintiff, therefore, adequately alleges that Defendants threatened serious harm in violation of 18 U.S.C. § 1589(a)(2).

---

[5] Further, Defendants deliberately did not provide Plaintiff with an employee handbook outlining his legal rights, despite the legal requirement to do so. *Id.* ¶¶ 43, 75-79.

**B.  Plaintiff Sufficiently Alleges that Defendants Threatened Abuse of Law or Legal Process in Violation of 18 U.S.C. § 1589(a)(3).**

Courts interpreting 18 U.S.C. § 1589(a)(3) have stated that threats of serious immigration consequences, such as deportation, "clearly fall within the concept and definition of 'abuse of legal process.'" *Garcia*, 2003 U.S. Dist. LEXIS 22088, at *23; *see also Nunag-Tanedo*, 2011 WL 1811029, at *10; *Velasquez Catalan v. Vermillion Ranch Limited Partnership*, No. 06-cv-01043-WYD-MJW, 2007 WL 38135, at *8 (D. Colo. Jan. 4, 2007).  In particular, a threat of immigration consequences becomes actionable if used in "any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  18 U.S.C. § 1589(c)(1).  Contrary to Defendants' assertion, no physical force or threat thereof is required to violate § 1589(a)(3).[6]  *Compare* Defs.' Mot. at 15 *with United States v. Peterson*, 627 F. Supp. 2d 1359, 1372 (M.D. Ga. 2008).

Plaintiff alleges that Defendant Stanley Peroulis threatened him with being sent back to Peru, despite the fact that he worked diligently and performed all tasks assigned to him.[7]  Pl.'s Compl. ¶¶ 55-56.  Plaintiff greatly feared being sent back to Peru because of the extreme hardship it would create for his family.  *Id.* ¶ 57.  Plaintiff alleges that Defendants knew and exploited this fear by demanding that Plaintiff work to their exact specifications, even if it meant working 17 hours per day and laboring with an injured

---

[6] Defendants also seemingly insinuate that a violation of 18 U.S.C. § 1589(a)(3) necessitates additional "violations of § 1589 such as physical abuse and other threats of serious harm."  Defs.' Mot. at 14.  Such an argument is contrary to the plain language of the statute and the case law.

[7] Plaintiff is neither alleging that statements made by Defendants about lunch breaks nor Defendants' multiple infractions of the H-2A regulations, such as failure to provide adequate food and an employee handbook, constitute "threatened abuse of law" under 18 U.S.C. § 1589(a)(3).  *Compare* Defs.' Mot. at 16 *with* Pl.'s Compl. ¶¶ 43, 52-53.

hand.  *Id.* ¶¶ 46, 50-51, 54, 69-70.  Defendants compelled Plaintiff to follow the rules

requiring him to remain on the ranch to work and not talk to outsiders.  *Id.* ¶¶ 63, 71.  As

pled, Defendants' threat constitutes a threat made for an improper purpose.

 Defendants attempt to argue that the threat of being returned to Peru is merely a

"valid, non-criminal reason" to inform Plaintiff "that he . . . is not complying with the

terms of his employment."[8]  Defs.' Mot. at 15.  Defendants, however, ignore the factual

allegations in Plaintiff's Complaint that provide the context within which the deportation

threat was made.  In *United States v. Calimlim*, the court examined the context in which

"warnings" about immigration consequences had been made to an undocumented

worker, including that the worker had no "exit option" and "could not freely work for

another employer."  538 F.3d 706, 712-13 (7th Cir. 2008).  The court concluded that

given such circumstances, the "warnings" constituted "abuse of the legal process" under

the TVPRA because they "were directed to an end different from those envisioned by

the law."  *Id.* at 713; *compare Alvarado v. Universidad Carlos Albizu*, No. 10-22072,

2010 WL 3385345, at *3 (S.D. Fla. Aug. 25, 2010) (finding a mere technical violation of

an immigration regulation, without more, did not constitute abuse of the legal process).

Further, an immigrant's special vulnerabilities are significant to a contextual

understanding of how a threat of being forced to leave the country becomes coercive.

*Dann,* 2011 WL 2937944, at *11.

 Here, Plaintiff, who speaks no English, had just left his home in the Peruvian

---

[8] Defendants also contradict Plaintiff's allegations that he worked diligently and performed all tasks
assigned to him.  *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010) (restating that the court must
assume that all factual allegations are true); *compare* Def.'s Mot. at 17 *with* Pl.'s Compl. ¶ 55.

highlands to come to the U.S. for the first time. Pl.'s Compl. ¶¶ 6, 8-9. Plaintiff alleges

that Defendants threatened to send him back to Peru with the specific knowledge that

he could only work for them with his H-2A visa and that being sent back to Peru would

cause him extreme financial hardship. Pl.'s Compl. ¶¶ 50, 56. Plaintiff further alleges

that he had no real "exit option" given that Defendants held his I-94 immigration

document evidencing his lawful U.S. presence and otherwise prohibited him from using

telephones, talking to outsiders and leaving the ranch unaccompanied. *Id.* ¶¶ 40, 42,

58-59, 61, 63-64, 71, 73. The context of the facts alleged is important to the plausibility

determination. *Gee v. Pacheco*, 628 F.3d 1178, 1185 (10th Cir. 2010). Plaintiff's

allegations evidence Defendants' intention that the threat had a coercive effect.

It is also not accurate that a threat of being sent back home is necessarily a

"valid" and "non-criminal" reprimand for an H-2A worker. Defs.' Mot. at 15, 17. Courts

have soundly rejected the argument that such threats towards temporary workers are

merely an advisement of legitimate consequences. *See, e.g., Ramos v. Hoyle*, No. 08-

21809, 2008 WL 5381821, at *4 (S.D. Fla. Dec. 19, 2008) (rejecting argument that

threats to deport H-2A workers were truthful statements and not an abuse of legal

process); *Velasquez Catalan*, 2007 WL 38135, at *8 (finding that defendants' threat to

have H-2A workers deported was sufficient to support a claim under 18 U.S.C.

§ 1589(a)(3)); *Ramos-Madrigal v. Mendiola Forestry Services, LLC*, No. 10-1078, 2011

WL 3209334, at *2 (W.D. Ark. July 1, 2011) (rejecting defendants' argument that threats

to report H-2B workers if they left their employment were merely informational rather

than "threatened abuse of the legal process"). Further, threats to send H-2A workers

back to their home countries are not legitimate reprimands because employers do not have the prerogative to effectuate workers' removal from the U.S., and such workers are not required to leave immediately upon termination. 8 C.F.R. § 214.2(h)(5)(viii)(B) (Jun. 1, 1987) (amended 2010). The H-2A regulations explicitly prohibit intimidation by employers. 20 C.F.R. § 655.103(g) (Jun. 1, 1987) (amended 2010).

Plaintiff, therefore, adequately pleads that Defendants used the threat of sending Plaintiff back to Peru for a "purpose for which the law was not designed" in order to "exert pressure" on Plaintiff in violation of 18 U.S.C. § 1589(a)(3) and (c)(1).

### C. Plaintiff Sufficiently Pleads that Defendants Participated in a Forced Labor Venture under 18 U.S.C. § 1589(b).

Under 18 U.S.C. § 1589(b), liability can attach if an individual "knowingly benefits, financially . . . from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a) [18 U.S.C. 1589(a)], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." Defendants wrongly presume that the "venture" consists of Crisologo Damian's recruitment activities. Defs.' Mot. at 18-20. As Plaintiff alleges no trafficking claims against Mr. Damian, this presumption is especially incongruous. Pl.'s Compl. ¶¶ 32-35.

Rather, Plaintiff is alleging that each of the Defendants has knowingly financially benefited from participation in the "venture" that is the ranch business. Pl.'s Compl. ¶¶ 10-11, 13, 15, 17-18. As stated above, Plaintiff sufficiently alleges that each Defendant knew, or was in reckless disregard, that the venture engaged in obtaining

Plaintiff's labor in violation of § 1589(a)(2)-(4). *See generally* Pl.'s Compl. ¶ 2. Plaintiff thus sufficiently alleges facts supporting that Defendants violated 18 U.S.C. § 1589(b).

### D. Plaintiff Sufficiently Alleges Unlawful Conduct with Respect to Documents under 18 U.S.C. §§ 1590 and 1592.

Plaintiff generally agrees with Defendants' recital of the legal standard for an unlawful conduct claim with respect to documents under the TVPRA. Defs.' Mot. at 21-22. As part of the claim, Plaintiff must plead that Defendants "knowingly . . . confiscate[], or possess[] any actual or purported passport or other immigration document, of another person." 18 U.S.C. § 1592. In *Ramos-Madrigal*, the court found that although workers were in possession of their passports and visas, the employer's alleged possession of their visa-extension documents could constitute a TVPRA violation. 2011 WL 3209334, at *2*4-5. Here, Plaintiff similarly alleges that Defendant Stanley Peroulis took Plaintiff's passport, visa, and I-94 upon his arrival to the ranch. Pl.'s Compl. ¶ 40. While Defendants later returned his passport and visa, they continued to retain his I-94 for the remainder of Plaintiff's time on the ranch. *Id.* ¶¶ 42, 73. Further, Plaintiff alleges that after his initial visa expired, Defendants did not provide him with an extension document or tell him whether his visa had been renewed, even after he had asked. *Id.* ¶¶ 58-59. Defendants' retention of Plaintiff's visa extension can be reasonably inferred because Defendants are responsible for applying for and obtaining the H-2A visas. *Id.* ¶ 27. Plaintiff adequately pleads, therefore, that Defendants "knowingly" possessed his immigration documents during his employment.

Defendants attempt to counter Plaintiff's allegations by positing their own version of what "really" happened with Plaintiff's documents. Defendants assert that their

continued possession of Plaintiff's I-94 was accidental and the failure to provide

Plaintiff's visa extension was possibly due to unavailability. Defs.' Mot. at 23-24.

Defendants, however, fundamentally misconstrue the new "plausibility" standard of

*Iqbal,* which does not provide them with a license to create what they believe to be a

more probable version of the events. 129 S. Ct. at 1249. Rather "a judge ruling on a

motion to dismiss must accept all allegations as true and may not dismiss" even if "it

appears unlikely the allegations can be proven." *Robbins*, 519 F.3d at 1247.

Defendants also argue that Plaintiff's claim must fail because he does not allege

that Defendants "had any knowledge" that Plaintiff was "concerned" because he lacked

possession of his I-94 or visa extension.[9] Defs.' Mot. at 22-23. No such requirement

exists in 18 U.S.C. § 1592. Nor have courts found such knowledge to be a prerequisite

to establishing or prevailing on a claim for unlawful conduct with respect to documents.

*See, e.g., Nunag-Tanedo*, 2011 WL 1811029, at *11-12; *Ramos-Madrigal*, 2011 WL

3209334, at *2 ; *Dann*, 2011 WL 2937944, at *12-13.

With respect to the other elements required to establish a claim under 18 U.S.C.

§ 1592, Plaintiff adequately pleads that Defendant possessed these immigration

documents "in the course" or "with the intent" of violating section 18 U.S.C. § 1589

(a)(2)-(4). As set forth in detail above, Plaintiff sufficiently alleges that Defendants

---

[9] To the contrary, Plaintiff's allegation that he asked Defendant about his renewal shows his concern for his visa extension. Pl.'s Compl. ¶ 59. Moreover, Defendants ignore that the I-94 and visa extension belong to Plaintiff. *See, e.g.*, U.S. Customs and Border Patrol, *Filling Out Arrival-Departure Record, CBP Form I-94, for Nonimmigrant Visitors with a Visa for the U.S.* (visited Aug. 30, 2011) <http://www.cbp.gov/xp/cgov/travel/id_visa/i-94_instructions/filling_out_i94.xml> (the I-94 "is to be in the applicant's possession at all times until the applicant departs the United States"); *Ramos-Madrigal*, 2011 WL 3209334, at *2 (finding that visa extensions for temporary workers must be in their possession to show lawful presence).

knowingly obtained his labor by means of threatened abuse of the legal process and/or

a scheme, plan or pattern intended to make him believe he would suffer serious harm.

## IV.     THE FAIR LABOR STANDARDS ACT (FLSA)

Defendants make two essential errors in trying to dismiss Plaintiff's FLSA claim.

First, Defendants mistakenly claim that there is no "definition" of the "range production

of livestock exemption" that they seek to apply to Plaintiff.  Defs.' Mot. at 25.  As defined

by the applicable regulations, Plaintiff sufficiently alleges facts to show he does not

meet the exemption.  Second, Defendants mistakenly argue that Plaintiff has not

properly pled he was paid less than the minimum wage, therefore ignoring the key

factual allegations supporting this straightforward claim.  As set forth below, Plaintiff

sufficiently alleges the facts necessary for his FLSA claim. *Id.* at 28.

### A.     Plaintiff Alleges Sufficient Facts to Support His Claim that He Is Not an Exempt Employee and Is Covered by the FLSA.

Defendants claim that Plaintiff is exempt from the FLSA because he was

"principally engaged in the range production of livestock."  29 U.S.C. § 213 (a)(6)(E).

Defendants, however, entirely omit reference to the regulations that were specifically

promulgated to interpret its statutory meaning.  *Compare* Defs.' Mot. at 25 *with* 29

C.F.R. §§ 780.323-329.  These regulations are entitled to judicial deference and are the

primary source of guidance for determining the scope of FLSA exemptions.  *Spradling*

*v. City of Tulsa,* 95 F.3d 1492, 1495 (10th Cir. 1996).

The requirements for the exemption to apply are as follows:

(a)  All the following conditions must be met in order for the exemption to
apply to an employee:
(1)  He must be "engaged in agriculture";

(2) Be "principally engaged";
(3) On the "range", and
(4) In the "production of livestock."

29 C.F.R. § 780.324.[10]  In order to be "principally engaged" in the range production of livestock, the employee must spend over 50 percent of his time during the year engaged in range production of livestock duties.  29 C.F.R. § 780.325.  "Range" is generally defined as land not suitable for cultivation or land that is not cultivated and tends to provide forage for animal consumption.  29 C.F.R. § 780.326.  "By its nature, range production of livestock is most typically conducted over wide expanses of land, such as thousands of acres."  *Id.*  "Production of livestock" is defined as activities requiring the employee to actively take care of animals or stand by in readiness for that purpose.  29 C.F.R. § 780.327.  "[I]mmediately incidental" duties to actively caring for livestock, such as inspecting and repairing fences, may also be considered production of livestock.  *Id.*  Finally, the regulations give overall guidance on the exemption by stating that the work "necessitates his constant attendance on the range, on a standby basis, for such periods of time so as to make the computation of hours difficult."  29 C.F.R. § 780.329.  As such, exempt work must be done away from "headquarters," defined as "a particular location for the discharge of management duties."  *Id.*

Plaintiff properly alleges that he was assigned non-range production of livestock duties the majority of the time.[11]  First, he pleads that he performed the majority of his work not on the range, but rather at the "Baggs" and "Hayden" ranches.  Pl.'s Compl.

---

[10] In order for the exemption to apply, Defendants must demonstrate that Plaintiff fails to plead each and every condition since all "the conditions must be met" for the exemption.  *Id.*
[11] Plaintiff's FLSA claim is limited to work performed in 2009.

¶¶ 47-48.  Second, he states that his primary duties were "to clean and mend corrals, build fences, cut weeds, sweep out the granary, and water the fields," which were not duties that involve actively taking care of animals.  *Id.* ¶ 47.  Nor were these duties "immediately incidental" to actively caring for livestock, since he performed these duties while he was "not in attendance of sheep, either on a constant or standby basis."  *Id.* Finally, Plaintiff repeatedly alleges that his hours were not difficult to compute, given that he performed his duties at "headquarters," worked a set schedule and was regularly supervised by Defendants.  *Id.* ¶¶ 19 , 46, 49.  Plaintiff's allegations, therefore, support the claim that he was not primarily engaged in the range production of livestock.[12]

The case law cited by Defendants does not mandate a different result.  These cases find that an exempt employee's primary duty must be the "constant surveillance" of livestock.  *Hodgson v. Elk Garden Corp.*, 482 F. 2d 529, 532 (4th Cir. 1973); *Hodgson v. Mauldin*, 344 F. Supp. 302, 311 (N.D. Ala. 1972).  The exemption was created specifically for employees who are in constant attendance to livestock, on a standby basis, as the livestock grazes and travels across wide, expansive range lands. *Id.*  By the nature of the job, these employees spend long periods of time away from headquarters, with little or no supervision, so it is difficult to track their work hours.  *Id.*

Defendants attempt to argue that all of Plaintiff's duties were "incidental" and thus constitute range production of livestock for purposes of the exemption.  Defs.' Mot. at 29.  Defendants, however, have mischaracterized the context of the "incidental" tasks discussed in *Mauldin* and as set forth in the regulations.  344 F. Supp. at 312; *see also*

---

[12] Plaintiff agrees with Defendants that they have the burden to prove the exemption and that it should "be narrowly construed against the employer."  Defs.' Mot. at 24-25.

29 C.F.R. § 780.327.  The court in *Mauldin* decided that employees spent much more than 50% of their time caring for cattle by performing such duties as "herding, handling, transporting, feeding, watering, caring for, branding, tagging, protecting or otherwise assisting in the raising of the livestock."  344 F. Supp. at 312.  The court further found the employees performed tasks such as repairing fences, which were determined to be incidental to their primary duties of caring for cattle.  *Id.*  In contrast, Plaintiff did not spend over 50% of his time assisting in the raising of livestock.  Pl.'s Compl. ¶ 47.

Further, Defendants implicitly argue that Plaintiff's hours were difficult to compute by alleging that Plaintiff's schedule consisted of "unpredictable hours at all times of the day and night."  Defs.' Mot. at 29.  Defendants are not permitted to interpose their own factual allegations on a motion to dismiss to create a more "probable" version of the events.  *Iqbal*, 129 S. Ct. at 1949.  In fact, Plaintiff's own allegations – that Plaintiff worked a set schedule of approximately 17 hours, starting each day before sunrise and working past sunset – contradict these assertions.  Pl.'s Compl. ¶¶ 46, 49.  Defendants also argue that certain allegations, such as that Plaintiff "was subject to regular supervision," are conclusory.  Defs.' Mot. at 29.  Neither *Iqbal* nor its progeny require Plaintiff to set forth in detail how he was subject to regular supervision. 129 S. Ct. at 1949 (discussing that "the pleading standard *Rule 8* announces does not require 'detailed factual allegations'"); *Robbins*, 519 F.3d at 1247.[13]  In any case, Plaintiff has

---

[13] Similarly, Defendants argue that Plaintiff's claim that he did not work on the range is conclusory.  Defs.' Mot. at 29.  Plaintiff alleges that he was located at the "Baggs" and "Hayden" ranches, where he spent the majority of his time "maintaining ranch facilities and fields," rather than on the "range" working on "wide expanses of land, such as thousands of acres."  Pl.'s Compl. ¶¶ 19, 47-48; 29 C.F.R. § 780.326(b).

pled other factual allegations demonstrating he had frequent contact with his supervisors and was thus subject to regular supervision. Pl.'s Compl. ¶¶ 53-55, 62.

Plaintiff, therefore, sufficiently alleges that he was not engaged in the type of "exempt work" described in the regulations and the applicable case law.

**B.      Plaintiff Pleads that He Was Not Paid Minimum Wage.**

Federal courts have continuously held, even after *Twombly*, that there is no extensive pleading requirement for FLSA claims alleging violation of the minimum wage or overtime compensation. *See, e.g., McDonald v. Kellogg*, No. 08-2473-JWL, 2009 WL 1125830, at *1 (D. Kan. Apr. 27, 2009). A plaintiff simply needs to allege sufficient facts that would allow the court to infer that he "actually received less than minimum wage." *Darrow*, 2010 2010 WL 1416799, at *2.

Plaintiff alleges that he received wages in the amount of $750 per month and that he worked approximately 17 hours per day. Pl.'s Compl. ¶¶ 45-46. Plaintiff further pleads that Defendants failed to pay him the required minimum wage during calendar year 2009 pursuant to the FLSA. *Id.* ¶¶ 87-88. By examining the amount of wages paid compared with hours worked, Plaintiff provides all of the factual detail necessary to claim that he received an approximate hourly wage of $1.45 – significantly less than the required federal minimum wage. Pl.'s Compl. ¶¶ 45-46. Courts are able to perform the calculations to make the reasonable inference that the wages paid violated federal minimum wage. *Darrow v. WKRP Management, LLC,* No. 09-cv-01613-CMA-BNB, 2011 WL 2174496, at *5 (D. Colo. June 3, 2011).

Contrary to Defendants' assertion, Defs.' Mot. at 28, there is nothing in the H-2A regulations that provides for a lawful exemption from federal minimum wage. *Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d 1228, 1236 (11th Cir. 2002). In fact, the regulations require that H-2A workers, such as Plaintiff, should receive the highest of the prevailing wage, the adverse effect wage rate or the state or federal minimum wage. 20 C.F.R. § 655.102(b)(9) (Jun. 1, 1978) (amended 2010); U.S. DOL Field Memo 24-01 (Aug. 1, 2001). The mere fact that Plaintiff was hired as an H-2A sheepherder, therefore, does not relieve Defendants of their burden to prove the work performed by Plaintiff meets a narrowly construed FLSA exemption. As set forth above, Plaintiff sufficiently alleges that he performed non-exempt work that subjects him to the FLSA.

Plaintiff, therefore, sufficiently pleads factual allegations, such that Plaintiff is plausibly entitled to relief under the FLSA.

WHEREFORE, Plaintiff respectfully requests that Defendants' Motion be denied because they fail to meet their burden of demonstrating that dismissal is appropriate.

Dated: September 2, 2011

s/Jennifer J. Lee_____
Jennifer J. Lee
Jenifer C. Rodriguez
Linda Surbaugh
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO 80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail: jlee@colegalserv.org
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September 2011, I electronically filed the foregoing Plaintiff's Response to Defendants' Motion to Dismiss using the EM/ECF system which will send notification of such filing to the following e-mail addresses:

Peter H. Doherty, phd@omhdlaw.com, las@omhdlaw.com

Lindsey Warren Jay, lwj@omhdlaw.com, tlz@omhdlaw.com

William George Pharo, william.pharo@usdoj.gov, USACO.ECFCivil@usdoj.gov


s/Jennifer J. Lee
Jennifer J. Lee
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail: jlee@colegalserv.org
Attorneys for Plaintiff