**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 10-cv-00772-MSK-MJW
consolidated with Civil Action No. 11-cv-01132-MSK-MJW**

**ROEL ESPEJO CAMAYO;
JUVENCIO SAMANIEGO DAMIAN,
JHOSEMAR SAMANIEGO FERNANDEZ, and
SILVIO INGA BRUNO,**

    **Plaintiffs,**

v.

**JOHN PEROULIS & SONS SHEEP, INC., a foreign corporation of Colorado;
LOUIS PEROULIS;
STANLEY PEROULIS; and
CRISOLOGO DAMIAN,**

    **Defendants.**

---

**OPINION AND ORDER DENYING MOTIONS TO DISMISS**

---

    **THIS MATTER** comes before the Court pursuant to the Defendants' Partial Motion to

Dismiss **(# 133)** the Third Amended Complaint **(# 126)**, and the Plaintiffs' response **(# 135)**.[1]

**FACTS**

    The following facts are derived from the Third Amended Complaint **(# 126)**, the

operative pleading in this matter. The Court limits its recitation to those facts relating to claims

---

[1] Due to a convoluted procedural history, the current Partial Motion to Dismiss supersedes and incorporates briefing on a pending Motion to Dismiss filed by the Defendants at Docket # 49 in Case No. 11-cv-1132, which itself superseded and incorporated briefing of a prior Motion to Dismiss at Docket # 18. The Court has considered all of these underlying briefs in its analysis of the instant motion.

by Mr. Fernandez and Mr. Bruno, the Plaintiffs whose claims are the subject of the motion to dismiss.

Defendant John Peroulis & Sons Sheep, Inc. ("Peroulis") operates two ranches in Colorado. It recruits foreign nationals to provide manual labor and agricultural work on the ranches pursuant to the H-2A Visa Program, 8 U.S.C. § 1188. That statute provides a means for employers to petition the Department of Labor for permission to hire aliens to perform work in situations where "there are not sufficient [citizen] workers who are able, willing, and qualified" to fill the jobs. 8 U.S.C. § 1188(a)(1)(A). Employers participating in the program must, among other things: (i) provide the employee with housing; (ii) provide employees with three meals per day or cooking and kitchen facilities that allow the workers to prepare their own means; (iii) provide transportation to and from the job location, as well as transportation between the housing site and worksite; (iv) guarantee the employee a specified number of hours of work during the contract period, calculated according to a particular formula; (v) pay the employees a specified wage at least twice monthly[2]; and (vi) provide the employee a copy of any employment contract in a language understood by the employee, among many other requirements. 20 C.F.R. § 655.122(c)-(q).

Mr. Fernandez and Mr. Bruno are Peruvian nationals. In 2009, they were recruited in Peru by associates of the Defendants and offered the opportunity to apply for work at Peroulis. Each applied for and received an H-2A visa, initially effective through October 16, 2009. (They were advised, however, that they were being hired for a 3-year term.) They incurred significant

---

[2]The Third Amended Complaint contends that a Department of Labor memo allows payment of employees performing sheepherding work on a monthly basis, notwithstanding the requirements of the regulations. The Court will accept that fact as true.

costs and fees in order to obtain the visas and associated paperwork and authorizations, and the Third Amended Complaint alleges that Mr. Fernandez's uncle, already employed by Peroulis, paid an additional $2,000 to Peroulis to get Mr. Fernandez the job. Both were transported to the United States, and eventually to the Peroulis ranch sites. They contend that, upon arrival, Defendant Stanley Peroulis confiscated their passports, visas, and I-94 authorization forms, although he returned some (but not all) of the documents later, and they further contend that they were not provided with copies of their employment contracts or employee handbooks.

Mr. Fernandez and Mr. Bruno describe difficult conditions on the jobsite, including long hours – "approximately 17 hours per day" – and difficult physical work. They contend that the Defendants provided them "with the barest of provisions," causing them to have to ration food or go hungry; on at least one occasion, Louis and Stanley Peroulis yelled at Mr. Fernandez for "taking in excess of 15 minutes to prepare and eat his lunch." They contend that Louis and Stanley Peroulis, their supervisors, were verbally abusive to them (screaming at them, and sometimes referring to them as "fucking son[s] of a bitch" and using a Spanish expression that translates to "ain't worth shit"). Louis and Stanley Peroulis were seen by Mr. Fernandez and Mr. Bruno kicking automobiles and animals and throwing tools. On one occasion, Stanley Peroulis "grabbed [Mr. Bruno] by his clothes, picking him up," but the Third Amended Complaint does not elaborate.

Both employees suffered on-the-job injuries. When Mr. Fernandez suffered a nail puncture to his hand during work, they refused to permit him to go to the hospital (claiming it was "too expensive"), instead providing him with bandages and "pills" and requiring hm to continue to work. Mr. Bruno suffered injuries from being bucked from a horse and from falling

off a ladder.  When Mr. Bruno resisted performing some work that was difficult because of his injuries, Stanley Peroulis "cursed and yelled" at him until Mr. Bruno relented and performed the work.

Mr. Bruno contends that the Peroulises were cognizant of the difficult financial circumstances the employees found themselves in, and that they threatened, implicitly and explicitly, to terminate his employment and send him back to Peru.  Specifically, he states that on one occasion, Louis Peroulis "threatened to send him back to Peru after he found Plaintiff talking to a coworker," and on another occasion, approached Mr. Bruno while making dinner and "yelled at [him] that he would be sent back to Peru."  On another occasion, Stanley Peroulis advised Mr. Bruno that "he had called immigration and the police" about some of Mr. Bruno's coworkers who had left the ranch, and that "the police had found these coworkers and that they were being returned to Mexico."   Mr. Fernandez contends that on at least one occasion, Stanley Peroulis "yelled at [him] and threatened to send him back to Peru after he could not immediately locate" Mr. Fernandez during a visit to the ranch.

Both Mr. Bruno and Mr. Fernandez feared losing the ability to financially support their families in Peru, "being blacklisted," and suffering "the personal humiliation of being returned to Peru prematurely."  When their initial visas expired in October 2009, they continued working, never receiving advisement from the Peroulises about their status or the renewals of their visas.  Eventually, both men decided to leave the ranch prematurely, notwithstanding the Defendants' retention of some of their immigration documents.

Based on these allegations, Mr. Fernandez and Mr. Bruno allege the following claims (Mr. Bruno asserts only the first claim along with Mr. Fernandez; all remaining claims are

asserted solely by Mr. Fernandez): (i) violation of the Trafficking Victims Protection Reauthorization Act ("TVPA"), 18 U.S.C. § 1589(a), which prohibits obtaining the labor of employees by means of "force, threats of force [or] physical restraint," "by means of serious harm," "by means of the abuse of law or legal process," or "be means of any scheme . . . intended to cause [the victim] to believe that [failing to perform the labor] would [cause the victim or another person to] suffer serious harm"[3]; (ii) violation of the Fair Labor Standards Act ("FLSA), 29 U.S.C. § 201 *et seq.*, in that the Defendants failed to pay Mr. Fernandez the required minimum wage for 2009; (iii) common-law false imprisonment, presumably under Colorado law; (iv) common-law outrageous conduct, presumably under Colorado law; (v) breach of contract, under a third-party beneficiary theory, with regard to Peroulis' agreement with the Department of Labor to abide by the terms of a 2001 H-2A compliance plan (apparently in settlement of prior litigation against Peroulis); (vi) breach of contract, relating to the terms of Mr. Fernandez's employment contracts; and (vii) common-law promissory estoppel, in that Peroulis made representations to Mr. Fernandez "regarding the length of [his] contract," upon which Mr. Fernandez relied, and that Peroulis "broke its promises" to Mr. Fernandez.

The Defendants move to dismiss **(# 133)** Mr. Fernandez and Mr. Bruno's claims, arguing: (i) as to the TVPA claims, Mr. Fernandez and Mr. Bruno do not allege any "force or threats of force" used against them, any "serious harm or threats of serious harm," and "abuse or threatened abuse of law or legal process," or any "scheme . . . intended to cause [them] to believe

---

[3]This claim also asserts that the Defendants violated 18 U.S.C. § 1592 by confiscating their immigration documents and further committed a violation of 18 U.S.C. § 1590 by "recruit[ing or] harbor[ing]" Mr. Bruno "for labor or services." It is unclear if Mr. Bruno believes these to be separately-actionable claims, or simply additional aspects of his TVPA claim.

5

that they or someone else would suffer serious harm or physical restraint," much less that any Defendant did so with the requisite scienter; (ii) as to any claim relating to the retention of immigration documents under 18 U.S.C. § 1592, Mr. Fernandez and Mr. Bruno cannot show that the defendants knowingly retained their immigration documents in order to prevent or restrict their movement; (iii) as to Mr. Fernandez's FLSA claim, Mr. Fernandez is exempt from FLSA protection because his job activities related to "the range production of livestock," 29 U.S.C. § 213(a)(6)(E); and (iv) as to the remaining state law claims, the Court should refuse to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(c)(3) in the absence of any viable federal claims.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court

first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. TVPA claims**

The TVPA provides that "whoever knowingly . . . obtains the labor or services of a person" using various unlawful means shall be guilty of a crime. 18 U.S.C. § 1589(a). Those unlawful means are: (i) "force, threats of force, physical restraint, or threats of physical restraint to that person or another person"; (ii) "serious harm or threats of serious harm to that person or another person"[4]; (iii) "the abuse or threatened abuse of law or legal process"; or (iv) "any scheme . . . intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18

---

[4]The statute defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or continue to perform labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). It is "intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion." *Kiwanuka v. Bakilana*, 844 F.Supp.2d 107, 115 (D.D.C. 2012).

U.S.C. § 1589(a)(1)-(4). Although the TVPA is a criminal statute, it also provides a civil cause of action for aggrieved persons. 18 U.S.C. § 1595(a).

The Court need not extensively examine each of the potential ways in which the TVPA can be violated, as it finds it sufficient to examine only the "abuse of the legal process" prong. Several cases have found the "abuse of the legal process" prong to be satisfied by conduct in which the employer threatens to involve law enforcement or immigration authorities in order to persuade the employee to remain faithful or continue working. For example, in *Kiwanuka*, the court denied a motion to dismiss a TVPA claim by a Tanzanian national who alleged that her employer "abused the legal process by threatening her with deportation should she fail to perform the work demanded of her." *Id.* at 115. The court found allegations that the employer threatened the "involvement of the FBI and deportation" as potential punishments was sufficient to set forth a claim under the TVPA. *Id.* In *Ramos-Madrigal v. Mediola Forestry Serv. LLC*, 799 F.Supp.2d 958, 960 (W.D.Ar. 2011), the court denied a motion to dismiss a TVPA claim, finding that allegations that the employer retained employees' visa extension documents and threatened them "with serious immigration consequences in order to prevent them from leaving employment" were sufficient to allege a claim under the "abuse of the legal process" prong.

Admittedly, there are other cases in which courts have found that employer's comments about immigration consequences that could occur, do not by themselves constitute an abuse of the legal process; rather, an employee is obligated to show that the threatened use of the legal process is a **misuse** of that process. *Alvarado v. Univsersidad Carlos Albizu*, 2010 WL 3385345

(S.D.Fl. Aug. 25, 2010) (slip op.)[5] *and cases cited therein*. But *Alvarado's* facts are not similar to those here. *Alvarado* did not involve "threats" of deportation or the involvement of police; rather, the employer merely threatened to withdraw support for (and retention of an attorney to assist) the employee's application to extend the employee's labor certification. Thus, a case like *Alvarado* is not particularly persuasive in the circumstances presented here.

This Court finds that, taking the facts in the light most favorable to the Plaintiffs, both Mr. Fernandez and Mr. Bruno have alleged facts showing that the Defendants engaged in conduct that could be deemed to fall within the "abuse of the legal process" prong of 18 U.S.C. § 1589(a)(3). As in cases like *Kiwanuka* and *Ramos-Madrigal*, Mr. Fernandez and Mr. Bruno have alleged that the Defendants threatened to have them sent back to Peru, apparently simply to instill fear and promote compliance. Moreover, the Defendants bragged to Mr. Bruno about involving the local police in arresting co-workers who had left the ranch, and retained important immigration paperwork belonging to both men. Taken as a whole, this conduct could be found to constitute an abuse of the legal process, sufficient to support the TVPA claims.[6]

Accordingly, the Defendants' motion to dismiss both Mr. Fernandez and Mr. Bruno's

---

[5]*Alvarado* presents a fairly dubious claim on its facts, as the employee there was a university professor being paid $ 95,000 per year, complaining that his employer's refusal to grant him extra compensation for performing the extra tasks of being Director of Recruitment and Admissions constituted a violation of the TVPA.

[6]This is not to say that an employer automatically violates the TVPA by acknowledging the adverse immigration consequences that might befall an employee who is terminated. Certainly, the TVPA was not intended to completely muzzle employers or prohibit them from mentioning certain legal realities. Rather, this Court is persuaded that the question of whether statements (and actions) by an employer must be viewed in light of all the surrounding circumstances, and thus, resolution of whether a certain statement amounts to an abuse of the legal process is one that is particularly difficult on the sparse record of a motion to dismiss.

TVPA claims is denied.[7]

### C. FLSA claim

The Court turns to Mr. Fernandez's claim under the FLSA. The FLSA requires that an employer pay a specified minimum hourly wage of between $6.55 and $ 7.25 per hour (depending on the date of the work) to employees engaged in commerce. 29 U.S.C. § 206(a)(1). Mr. Fernandez alleges that he was "always required to work long ours, approximately 17 hours per day," although he does not clearly allege how many days per week he worked. He contends that he was paid a monthly wage of $ 750. Basic math demonstrates that if Mr. Fernandez was paid $6.55 per hour, and worked an average of 17 hours per day, he would earn about $ 111 per day, and reach his monthly $ 750 paycheck after working fewer than 7 days each month. A fair reading of the Third Amended Complaint permits an inference that Mr. Fernandez worked more than 7 days per month for the Defendants, and thus, the Court finds that, while not a model of clarity, the Third Amended Complaint states a *prima facie* claim for a violation of the FLSA's minimum wage rule.

The Defendants offer two arguments in support of dismissal of Mr. Fernandez's FLSA claim. First, they contend that Mr. Fernandez is exempt from the FLSA's minimum wage rules under the "range production of livestock" exemption in 29 U.S.C. § 213(a)(6)(E). That provision states that "any employee employed in agriculture, if such employee is principally engaged in the range production of livestock," is exempt from the minimum wage requirement of the FLSA. The Department of Labor's regulations interpreting the FLSA explain that, for the

---

[7]Because the Court finds sufficient merit in the Plaintiffs TVPA claim under § 1589 to proceed, it does not address whether their possible alternative claims under that Act via 18 U.S.C. §1590 or § 1592 are also cognizable.

exemption to apply, the employee must meet three elements: (i) be "principally engaged," (ii) "on the range," (iii) "in the production of livestock. 29 C.F.R. § 780.324(a)(2)-(4). Those terms are each defined with some degree of specificity in subsequent sections of the regulation.

The Court need not engage in an extensive examination of these elements with regard to Mr. Fernandez's allegations. It is clear that application of the livestock exemption is a fact-intensive inquiry into the particular tasks that Mr. Fernandez performed, where they were performed, and for how long. 29 C.F.R. § 780.323. Because the question involves applying an exemption to the FLSA, the burden of proof is on the Defendants to show that Mr. Fernandez's work excluded him from the protection of the Act. *See Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1157 (10th Cir. 2012).

The Court cannot say that the Third Amended Complaint so clearly describes the particular tasks Mr. Fernandez performed with such specificity that the Court can determine that he is not covered by the Act. There is some suggestion that some of the tasks Mr. Fernandez performed such as "cutting weeds," "watering fields," and "clearing a ditch" would fall within the Act. *Compare* 29 C.F.R. § 780.327 ("such works as terracing, reseeding, haying, and constructing dams, wells, and irrigation ditches would not be considered as the production of livestock"). Accordingly, the Court cannot say that, on the mere face of the Third Amended Complaint, that the Defendants have shown that Mr. Fernandez falls within the FLSA's livestock exemption.

The Defendants' second argument is more abbreviated. The Defendants contend that "$750 per month is the applicable wage rate for H-2A sheepherders like Plaintiff." *Citing* 20 C.F.R. § 655.120(a) (employer must pay "a wage that is the highest of the AEWR [adverse effect

11

wage rate] . . . or the Federal or State minimum wage"). Assuming, without necessarily finding, that the Defendants are correct that $ 750 per month is the Department of Labor's established AEWR in effect at the time, the regulation they cite to requires payment of the **highest** of either the AEWR or the minimum wage. As noted above, taking Mr. Fernandez's allegations of 17-hour workdays as true, it is clear that the Federal minimum wage would quickly overtake the AEWR in only a few days' time, such that payment of the minimum wage, not the AEWR, is required.

It may ultimately be that Mr. Fernandez's FLSA claim is found to be factually- or legally-deficient. However, at this point, on the limited record supplied by the Third Amended Complaint, and with the benefit of a standard of review that requires the Court to read his allegations in the light most favorable to him, the Court finds that Mr. Fernandez has adequately stated a claim for violation of the FLSA's minimum wage provisions.

### D. Supplemental jurisdiction

Because the Court finds Mr. Fernandez to have adequately pled claims over which this Court has primary jurisdiction, the Defendants' request that the Court decline to exercise supplemental jurisdiction over Mr. Fernandez's state law claims is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion to Dismiss **(# 133)** is **DENIED**. This ruling also operates to deny the motion at Docket # 49 in 11-cv-1132.

Dated this 24th day of September, 2012

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge